[No. 1317.]

SCHOYER v. LEIF.

1. APPELLATE PRACTICE—FINDINGS OF FACT.
Findings of fact by the trial court will not be disturbed on appeal where there is evidence to support them, unless manifestly against the weight of the evidence.

2. PLEDGES—PRIORITY OF LIEN.
A swindler borrowed money from L. on the faith of two valuable diamonds, but substituted in place of the valuable diamonds worthless stones; afterwards he borrowed from S. money on the same diamonds, but substituted in their stead two inferior yellowish stones. Upon arrest of the swindler, the officer got possession of the valuable diamonds, and S. delivered to the officer the two inferior stones to be used in evidence.   While the officer was in possession of the four diamonds, the swindler in the presence of the officer agreed with L.'s counsel that the diamonds then in the possession of the officer should so remain and be held by him as a pledge to secure L.'s claim. Afterwards, the prisoner executed to S. a written transfer of the

VOL. XI—4

valuable diamonds as a pledge to secure his note to S. *Held*, that the pledge to L. was a prior lien on the valuable diamonds, but that the inferior stones having been delivered to the officer as bailee were still in the possession of S., and were not subject to any agreement between the prisoner and L.'s counsel.

*Appeal from the District Court of Arapahoe County.*

Messrs. MULLER & WEIL, Mr. LUCIUS WEINSCHENK and Mr. CHAS. D. MAY, for appellant.

Mr. THOMAS B. STUART and MR. CHARLES A. MURRAY, for appellee.

WILSON, J., delivered the opinion of the court.

About January 30, 1895, plaintiff Mrs. Leif loaned to a man representing himself to be R. F. Rogers the sum of about $900. The security for the loan was two diamonds of superior quality, which were to be delivered to her, and were by her to be kept in a bank in Denver until the maturity of the debt. Shortly thereafter, defendant Schoyer loaned to one representing himself to be G. W. Kenny the sum of $500, receiving in pledge as security therefor, as was agreed and understood, two diamonds, blue white in color, and valued at $1,200. Soon afterwards both parties discovered that they were the victims of a swindle. Mrs. Leif found that instead of receiving from the pretended Rogers gems of superior quality and value as promised, he had by some means changed the stones which were placed in a package deposited in the bank, and substituted for the real ones, glass ones of no value. Schoyer found upon opening his package, instead of the blue-white diamonds, two yellowish or off-color stones of very inferior value. Each reported his loss on the same day, March 5, 1895, to Mr. Farrington, one of the original defendants in this suit, who was then chief of detectives of the city of Denver. On the same day, Schoyer ascertained that a man was about to secure a loan from a Mr. Conley, whose office was in the Opera House, on diamonds as security, and

having reason to suspect that he was the same person who had perpetrated the fraud upon him, he notified the detectives, who proceeded to Mr. Conley's office, and arrested a man claiming to be G. W. Kennedy as he was in the act of consummating a loan from Mr. Conley. On searching him, there were found upon his person two fine blue-white diamonds, and Mr. Conley turned over to the officers two yellowish, or off-color diamonds, which had just been, or were about to be, palmed off upon him by the prisoner. Kennedy was removed to police headquarters, where he was recognized by Schoyer as the same Kenny who had perpetrated the fraud upon him, and by Mr. Stuart, one of Mrs. Leif's lawyers, as the Rogers who had victimized her. At this place, and on this day, in the presence of a crowd of excited parties, attorneys and officers, occurred the circumstances upon which were based a number of suits, including the one at bar, and concerning which there is an irreconcilable conflict of testimony. It is claimed on the part of plaintiff that after the prisoner was identified by her attorney, he then and there agreed, although denying that he was the man who defrauded Mrs. Leif, that the diamonds then in possession of the chief should so remain and be held by him as a pledge for the payment of any claim which Mrs. Leif might establish against him in a suit to be commenced by her. A memorandum in writing of this agreement was made by Chief Farrington at the request of plaintiff's attorney. On the part of Mr. Schoyer, it appears that he first delivered to Chief Farrington, at his request, the yellowish stones, one diamond ring and one diamond stud, which had been palmed off on him instead of the valuable stones, to be used by the Chief in the prosecution criminally of the prisoner. He then secured an attachment writ from the district court for the purpose of seizing the other stones, but the Chief refused to deliver them to the sheriff. Whilst these matters were transpiring, it is claimed that the attorney for Mr. Schoyer secured from the prisoner an agreement that the blue-white stones then in the possession of Chief Farrington should be held as a pledge to secure the payment of his note

to Schoyer for the sum of $500. This agreement was in writing, and reads as follows:

"METROPOLITAN POLICE DEPARTMENT.
"Telephone 79.          DENVER, COLO., March 5, 1895.
"I have this day turned over to A. Schoyer two diamonds in settings—one in ring, and one in stud—which I have pledged as security to A. Schoyer for the payment of my note to him for $500, dated on or about February 27, 1895.
"GEO. KENNY."

It is then claimed that the chief still refusing to deliver up any of the stones until a trial was had or the matter could be determined in court, it was finally arranged that he should give to Mr. Schoyer a receipt for the two fine stones held by him and found upon the person of the prisoner. This was done, and the receipt was as follows:

"METROPOLITAN POLICE DEPARTMENT.
"Telephone 79.          DENVER, COLO., March 5, 1895.
"Received from A. Schoyer two diamonds in setting—one set in ring, and one set in stud—which were turned over to him by Geo. Kenny as security, and being the same diamonds identified by Mr. Allen, the same to be held by me to be used as evidence.
"W. R. FARRINGTON, *Chief of Detectives.*"

The sheriff was then instructed to return the writ of attachment without service, which was accordingly done, and the attachment suit appears to have been dismissed. The alleged agreement of Mrs. Leif's counsel with the prisoner, and Mr. Schoyer's counsel with him, constitute the basis of much subsequent litigation, including the present suit. The chief contention seems to have been as to which of these agreements was actually first in point of time.

The scene of the next act in the history of the case is in the district court of Arapahoe county. On March 9, Mrs. Leif commenced her suit, making as parties defendant Rogers, *alias* Kenny, *alias* Kennedy, and Chief Farrington. The

complaint set up the fact of the loan, and that defendant Farrington had in his possession six diamonds belonging to his codefendant, being the two found upon his person, the two off-color stones delivered by Mr. Schoyer, and the two delivered by Mr. Conley. It also set forth the agreement with Mrs. Leif through her counsel, that these stones should be held as a pledge for the payment of any claim which she might establish against him. The prayer was that she have judgment for the amount of the debt, and that such judgment be declared to be a first lien upon the six diamonds in Chief Farrington's possession, and that they be sold to satisfy the same. On March 12, Schoyer commenced a suit in replevin against Chief Farrington, to recover possession of four of the stones, the two blue-white ones found upon the prisoner at the time of his arrrest, and the two yellowish ones delivered by him to the chief. He claimed the right to the possession of the stones by virtue of his agreement with Kennedy on March 5, the day of his arrest. On June 11, Mrs. Leif recovered judgment as prayed for in her suit, and on June 28, Schoyer recovered judgment in his replevin suit. Here, then, were two judgments against Farrington, in favor of different persons, but for the same property. On July 26, following, Farrington commenced a suit in equity against Mrs. Leif and Mr. Schoyer. The bill of complaint set forth at great length the history of the diamonds, and of the litigation over them, and prayed the court to determine the priority of lien or right of the defendants to the diamonds, and to make such orders as would relieve him from responsibility and liability under the two judgments. Within a few days thereafter, Mrs. Leif commenced a suit in equity, making Schoyer and Farrington defendants, praying for a judgment and decree establishing her priority of lien, etc. By agreement, the Farrington suit was consolidated with this, and the complaint in his suit was treated as his answer to Mrs. Leif's complaint. Schoyer then filed a separate answer, denying specifically the allegations of plaintiff's complaint, and alleging the superiority and priority of his lien. Upon trial, the judge impaneled a jury for

advisory purposes, and submitted to them certain special interrogatories covering the principal facts at issue. After a protracted trial, the jury were unable to agree except as to the first special interrogatory. They found that at the time of the commencement of this action, the plaintiff had a lien upon the diamonds described in her complaint. As to all other interrogatories, they could not agree, and were discharged after being required to deliberate for a very considerable length of time. Thereupon, the court made its findings in favor of plaintiff, and rendered a decree accordingly. From this defendant Schoyer appeals.

There are numerous assignments of error, but substantially only one has been argued to this court by either side. That is, that the findings and decree were not supported by the evidence. Counsel on both sides take extreme positions. In behalf of the appellant, it is urged that there is no evidence whatever to support either the findings or the decree, while the attorneys for appellee claim with equal earnestness that there was no evidence which would have sustained a decree in favor of the appellant. It has been repeatedly held by this court that where there is a conflict in evidence, and there is testimony to support the findings of the trial judge, they will not be disturbed unless it is apparent that they were manifestly against the weight of the evidence. The wisdom of this rule is strikingly exemplified in this suit. The witnesses were few in number, being confined solely, as to the material circumstances, to the actual parties to the suit, with two exceptions, one on each side. In such case, how is this court to determine, simply by an inspection of the record, as to who was mistaken, or who made false statements? So far as the written record is concerned, one is as worthy of belief as the other. It is the trial judge who under such difficult circumstances has advantages not possessed by this court in determining upon the credibility of witnesses. He sees the witness in person, is a silent spectator of his manner and conduct upon the witness stand, not only while being interrogated by his own counsel, but while under fire

from those of the opposing party. By employing these opportunities, he usually can, and most generally does, come to a conclusion as to which witnesses are most worthy of belief as to any given statement of facts. It is upon these reasons that the rule is founded which prevails in all the appellate courts of the country. It is in furtherance of the settlement of litigation, in which the public, as well as the parties to it, have some interest. We see no reason to depart from the rule in the present instance. There was a wide latitude allowed in the giving of testimony, and nothing appears to have been refused which could by any possibility have been germane to the issues in any manner. There was testimony to support the findings and decree as to the main issue, and hence they will not be disturbed. By the main issue we mean what appears to us from a careful reading of the whole record to have been the principal object in the contest,—that is, the determination of the priority of lien on the two blue-white stones which were of superior and great value. In the heat of the battle over these, the judge seems to have overlooked, or rather not to have scrutinized closely, the evidence in reference to the two yellowish or off-color stones which Mr. Schoyer had in his possession all the time, and which he delivered to Chief Farrington solely for the purpose of their being used in criminal proceedings against Kennedy. They were never returned to Kennedy, and Farrington never had possession of them other than as bailee for Schoyer. They were clearly, therefore, not subject to any agreement which the counsel for Mrs. Lief made with Kennedy in reference to the retention by Chief Farrington of the stones as a pledge to secure payment of any judgment which she might recover against him. Schoyer was rightfully in possession of them, never parted with this right, nor with the possession itself except temporarily to a bailee for a specific purpose, and he could not be divested of this right by any agreement to which he was not a party. He should have judgment for the return of these stones to his possession.

It appears from these views that the judgment must be

modified, but the case will not be remanded for that purpose. Under the power vested in this court, we will render such a modified judgment as is proper and necessary in accordance with our views of the rights of the parties. Judgment will be entered, giving to defendant Schoyer possession of the two diamonds described as yellowish or off-color which were delivered by him to Chief Farrington at the time of the arrest of Kennedy, for use in his prosecution. In all other respects the judgment will be affirmed.

*Judgment modified and affirmed.*